**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THE SHAW GROUP INC.,**<br><br>**Plaintiff,**<br><br>**versus**<br><br>**SHAW CAPITAL, LLC, SHAW CAPITAL, L.P., J.M. BERNHARD JR., JEFF JENKINS, JOHN DONOFRIO, GEORGE BEVAN, and RUSSELL BROWN,**<br><br>**Defendants.** | **Civil Action No.: ____________________**<br><br>**Judge ___________________**<br><br>**JURY TRIAL DEMAND** |

**COMPLAINT FOR DAMAGES**
**AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Plaintiff, The Shaw Group, Inc. ("Shaw Group"), for its Complaint against Defendants, Shaw Capital, LLC ("Shaw Capital LLC"), Shaw Capital, L.P. ("Shaw Capital LP") (Shaw Capital, LLC and Shaw Capital, LP are collectively referred to as the "Business Defendants"), J.M. Bernhard Jr. ("Bernhard"), Jeff Jenkins ("Jenkins"), John Donofrio ("Donofrio"), George Bevan ("Bevan"), and Russell Brown ("Brown") (Bernhard, Jenkins, Donofrio, Bevan and Brown are collectively referred to as the "Individual Defendants"; the Business Defendants and the Individual Defendants are collectively referred to as the "Defendants"), state as follows:

## INTRODUCTION

1. This is an action for infringement of federally registered service marks in violation of Section 32(1) of the United States Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114(1), for false descriptions and representations and false designations of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for

unfair competition, infringement of common law trade names, service marks, and trademarks, and deceptive acts or practices in the conduct of trade and commerce under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 1405 *et seq.*, for likely injury to business reputation and service mark dilution under the Louisiana Anti-Dilution statute, La.Rev.Stat. 51:223.1, and for breach of fiduciary duties under the law of the State of Louisiana.

2. Plaintiff's related company, Chicago Bridge and Iron Company NV ("CB&I"), is one of the world's leading integrated engineering, procurement, and construction ("EPC") services providers and major process technology licensors, delivering comprehensive solutions to customers primarily in the energy, petrochemical, and natural resource industries. Among other things, CB&I engineers and constructs some of the world's largest energy infrastructure projects, and provides engineering, procurement, fabrication, construction and environmental services for the hydrocarbon, petrochemical, gas processing, water, power, and nuclear industries. Its projects include, without limitation, above ground storage tanks, elevated storage tanks, Liquefied Natural Gas ("LNG") tanks, pressure vessels, and other specialty structures, such as nuclear containment vessels, LNG liquefaction and re-gasification terminals, gas processing plants, refinery units, petrochemical complexes, and a wide range of other energy-related projects. CB&I is also a leading provider of governmental services on large high-profile programs and projects, including design-built infrastructure projects, for federal, state, and local governments.

3. CB&I entered into a certain Transaction Agreement dated as of July 30, 2012 (the "Transaction Agreement") with The Shaw Group Inc. (the "Company"), pursuant to which CB&I agreed to buy the Company for approximately $3 billion dollars in cash and equity. Under the terms of the Agreement, CB&I created a wholly owned subsidiary acquisition vehicle, Crystal

Acquisition Subsidiary Inc. (the "Acquisition Sub"), to merge with and into Company, with the surviving corporation being Plaintiff Shaw Group, a wholly owned subsidiary of CB&I. The transaction closed on February 13, 2013, and, by virtue of the merger, Plaintiff Shaw Group became and remains the owner of all assets, properties and rights of the Company, including, without limitation, the SHAW trade name, the SHAW service marks, and all trademarks, service marks, logos, trade names, corporate names, trade dress, designs, slogans and general intangibles of like nature owned by the Company, including all goodwill associated therewith, and all applications, registrations, and renewals in connection therewith.

4. Upon information and belief, immediately prior to the Closing, Defendant Bernhard served as the Chairman of the Board of Directors, President, and Chief Executive Officer of the Company, and personally profited by well over $36 million as a result of CB&I's acquisition of the Company. Upon information and belief, two weeks prior to the Closing, Defendant Bernhard formed Defendant Shaw Capital LLC and Defendant Shaw Capital LP. Upon information and belief, following the Closing, on or around April 18, 2013, the Individual Defendants, Shaw Capital LLC, and Shaw Capital LP commenced business operations, and are now operating their business in the State of Louisiana and in this District, under the name of "Shaw Capital Partners," a private equity firm that seeks to invest in independent energy and infrastructure companies and assets, including power plants, pipelines, and E&P companies. Defendants knowingly engaged in the foregoing activities in bad faith and with the sole purpose and intent of misappropriating the distinctive SHAW name and marks, and the goodwill associated therewith, and to cause confusion, to cause mistake, and to deceive the trade and the public into thinking that Shaw Capital Partners is the same as, is related to, or is affiliated or connected with, or licensed by Plaintiff Shaw Group.

## PARTIES

5. Plaintiff, The Shaw Group Inc., is a Louisiana corporation with its principal place of business located in 4171 Essen Lane, Baton Rouge, Louisiana 70809.

6. Defendant, Shaw Capital LLC, is a corporation organized on January 31, 2013, under the laws of the State of Delaware, with a principal place of business located at II City Plaza, 10th Floor, Baton Rouge, Louisiana. On information and belief, Shaw Capital LLC is operating under the name "Shaw Capital Partners."

7. Defendant, Shaw Capital L.P., is a partnership organized on January 31, 2013, under the laws of the State of Delaware and registered to do business in Louisiana, with a principal place of business located at II City Plaza, 10th Floor, Baton Rouge, Louisiana. On information and belief, Shaw Capital LP is operating under the name "Shaw Capital Partners."

8. Defendant, Bernhard, is an individual and resident of the State of Louisiana with an address located at 1700 Highland Road, Baton Rouge, Louisiana 70810.

9. Defendant, Jenkins, is an individual and resident of the State of Louisiana with an address located at 7102 Moniteaux Court, Baton Rouge, Louisiana 70809.

10. Defendant, Donofrio, is an individual and resident of the State of Louisiana with an address located at 17920 Shoal Creek, Baton Rouge, Louisiana 70810.

11. Defendant, Bevan, is an individual and resident of the State of Louisiana with an address located at 19420 North Murifield Crt., Baton Rouge, Louisiana 70810.

12. Defendant, Brown, is an individual and resident of the State of Louisiana with an address located at 103 Ducharme, Lafayette, Louisiana 70504

13. Each of the foregoing Defendants had sufficient minimum contacts within this state and district, transacted business within this state and district, committed torts within this

state and district, and committed torts outside this state and district that caused injury within this state and district.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 15 U.S.C. §1121 and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction under 28 U.S.C. § 1367 over claims arising under Louisiana state law. In addition, the amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and this action is between citizens of different states. 28 U.S.C. § 1332.

15. The Court has personal jurisdiction over Defendants Shaw Capital LLC and Shaw Capital LP based upon the fact that Defendants are situated and conduct business in the State of Louisiana.

16. The Court has personal jurisdiction over the Individual Defendants based upon the fact that they are individual and residents of the State of Louisiana.

17. Venue is proper in this District under 28 U.S.C. §§ 1391 (b) and (c) because Defendants are conducting business in this District, the claims arise in this District, and the acts of infringement have taken place and are continuing to take place in this District.

## STATEMENT OF FACTS

### The Distinctive and Well-Known SHAW Name and Marks

18. In or around 1986, and long prior to the acts complained of here, the Company was founded by Defendant Bernhard and two other individuals as a fabrication shop under the name "Shaw Industries Inc." Over the past twenty-seven years, the Company expanded from the original fabrication shop and grew into a Fortune 500 company with approximately 25,000

employees and $6 billion revenue, providing engineering, construction, maintenance, technology, fabrication, remediation and support services for clients in the energy, chemical, environmental, infrastructure and emergency response industries.

19. Since at least as early as 1986, and long prior to the acts of Defendants complained of herein, the Company adopted and continuously used SHAW as the dominant and primary element of the Company's original corporate name "Shaw Industries, Inc." Upon information and belief, the Company later changed its corporate name to "The Shaw Group Inc.," but at all times the Company used SHAW as the dominant and principal element of the trade name under which the Company conducted its business. Since long prior to the acts of Defendants complained of herein, the SHAW trade name was used by the Company and others to identify the Company such that the Company was and has been generally known and referred to among the trade and the public as SHAW.

20. Over the course of the past twenty-seven years, and since long prior to the acts of Defendants complained of herein, the Company has formed numerous wholly owned subsidiary corporations that operate their businesses under corporate and trading names that incorporate SHAW as the primary and dominant element of those names. Attached hereto and made a part of this Complaint as Exhibit A is a list of 194 subsidiary companies that the Company has formed that operate under corporate and trading names that incorporate SHAW as the primary and dominant element of those names and which are now owned by Plaintiff Shaw Group.

21. Among the numerous "Shaw" subsidiary corporations owned by the Company and now owned by Plaintiff Shaw Group is "Shaw Capital, Inc.," a corporation organized and existing under the laws of the State of Louisiana. Upon information and belief, the Company formed Shaw Capital, Inc., as a Louisiana corporation on February 7, 2006, and long prior to the

acts of the Defendants complained of herein, to complement the Company's traditional engineering and construction services by providing access to capital for equity, mezzanine, and debt investment opportunities in the energy, chemicals, environmental, infrastructure, and related markets, which services are similar if not identical to the services now being offered by Defendants.

22. In 2011, Shaw Capital, Inc. was reorganized in Louisiana as a limited-liability company, and is now known as "Shaw Capital, LLC," and remains a company owned by Plaintiff Shaw Group.

23. Since at least as early as 1986, and since long prior to the acts of Defendants complained of herein, the Company adopted and began to use, and has used for the past twenty-seven years, in interstate commerce throughout the United States, the designation SHAW as the Company's principal service mark for all of its engineering, construction, maintenance, technology, fabrication, remediation and support services for clients in the energy, chemicals, environmental, infrastructure and emergency response industries.

24. Since their first use twenty-seven years ago, and since long prior to the acts of Defendants complained of herein, the SHAW name and mark have been prominently and conspicuously used in the business of the Company. The Company has extensively promoted and advertised its business under the SHAW name and its services under the SHAW mark, and the sales of those services under the SHAW name and mark have been tremendous and widespread, amounting to many billions of dollars.

25. By reason of said long use and said advertising and promotion, and since long prior to the acts of Defendants complained of herein, the SHAW name and mark have come to be and are now recognized and relied upon by the trade and the public as identifying the business

and services of the Company, and distinguishing that business and those services from the businesses and services of others, and the SHAW name and mark represent an enormously valuable goodwill and reputation belonging exclusively to the Company (and now Plaintiff Shaw Group). Over the years, the Company has received considerable high profile press recognizing, and further establishing, the reputation of and goodwill in the SHAW name and mark.

26. The Company registered its SHAW mark in the United States Patent and Trademark Office for its services as follows, and such registrations are valid and subsisting:

- Registration No. 2685606, for the mark SHAW and Triangle Design, which issued on February 11, 2003, and has now achieved incontestable status:

- Registration No. 2712796, for the mark THE SHAW GROUP INC., which issued on May 6, 2003, and has now achieved incontestable status.

27. The trade name SHAW E&I is also registered under Louisiana State Registration No. 575537 by the Company's (now Plaintiff Shaw Group's) wholly owned subsidiary Shaw Environmental & Infrastructure Inc.

28. On February 13, 2013, upon the Closing of the Transaction Agreement, CB&I's wholly owned Acquisition Subsidiary merged with and into the Company, with the surviving corporation being Plaintiff Shaw Group, as a wholly owned subsidiary of CB&I.

29. By virtue of the Transaction Agreement, Plaintiff Shaw Group acquired all assets, properties and rights of the Company, including, without limitation, (1) all trademarks, service

marks, logos, trade names, corporate names, trade dress, designs, slogans and general intangibles of like nature owned by the Company, including, without limitation, the SHAW trade name, the SHAW mark, and all goodwill associated therewith, and all applications, registrations, and renewals in connection therewith, and (2) the subsidiary corporations of the Company, and all trademarks, service marks, logos, trade names, corporate names, trade dress, designs, slogans and general intangibles of like nature owned by the subsidiary corporations of the Company, including, without limitation, the SHAW CAPITAL trade name and all goodwill associated therewith, and the SHAW E&I trade name, and all goodwill associated therewith, and all applications, registrations, and renewals in connection therewith (the trade names and marks containing the distinctive SHAW designation owned by Plaintiff Shaw Group are hereafter collectively referred to as the "Shaw Marks").

30. Following the acquisition, Plaintiff Shaw Group owned and currently owns all right, title and interest in and to the SHAW Marks.

**Defendants' Unlawful Conduct**

31. Defendant Bernhard, as the founder and as the former Chairman of the Board of Directors, President, and Chief Executive Officer of the Company, the remaining Individual Defendants, as employees or executives of the Company, and the Defendants Shaw Capital LLC and Shaw Capital LP, in common with the public, were and are all well aware of the enormous goodwill and reputation symbolized by the SHAW Marks.

32. Prior to the Closing, Defendant Bernard gave several television, newspaper, and business journal interviews, and issued press releases, about CB&I's acquisition of the Company in which he recognized the reputation and goodwill symbolized by the SHAW Marks:

- "CB&I's plan is to have Shaw as one of their subsidiaries. They have three others," Bernhard told News 2 in an exclusive interview. "Shaw is

going to be a subsidiary as well. It'll be right here in the building on Essen Lane. It'll be called 'CBI Shaw.' ***They'll add three letters to the name, and for most people in Baton Rouge, they won't notice the difference too much."*** (Emphasis added.)

- "I'm not going to be here anymore. I'm retired, so we're talking about two to three of the top executives, and [CB&I] will have some new executives take our places to manage it like they want to," Bernhard said. He hopes CB&I would hire from within, but there are no guarantees. There are also no guarantees Shaw operations will continue to be based in Baton Rouge many years down the line. ***But Bernhard said Shaw's name recognition and prior partnerships in Louisiana could mean the merger may create dozens of CB&I business opportunities in the future.*** (Emphasis added.)

- "CB&I plans to operate Shaw as a business sector under the brand name CB&I Shaw ***to enable the company to retain Shaw's brand equity*** and to allow the combined organization to capitalize on the resources, capacity and best practices from each group for the benefit of all stakeholders." (Emphasis added).

33. Notwithstanding that knowledge, and indeed by reason of it, Defendants adopted and began to use the SHAW name and mark as the principal and distinguishing component of the name and service mark under which they now do business, SHAW CAPITAL PARTNERS.

34. With full knowledge of Plaintiff Shaw Group's impending ownership of the Shaw Marks, on January 31, 2013, a few weeks prior to the Closing, and during his period of employment with the Company, Defendant Bernhard and certain of the Individual Defendants formed Shaw Capital LP, a Delaware partnership, and Shaw Capital LLC, a Delaware corporation, and registered those entities with the State of Louisiana.

35. Shortly after the Closing, on or around April 2013, Defendants adopted and commenced use of the name SHAW CAPITAL PARTNERS for their business of investing in energy and infrastructure companies and acquiring majority interests in power and energy companies. According to news reports quoting Defendant Bernhard, the partnership seeks to

provide up to $3 billion in equity for acquisitions of assets in the energy and infrastructure segment throughout Louisiana, the United States, and the world.

36. Defendants adopted and used the SHAW CAPITAL PARTNERS name and mark despite the Individual Defendants' prior, actual knowledge of the prior existence of the Company's subsidiary Shaw Capital, Inc., now known as Shaw Capital, LLC, which has the identical SHAW CAPITAL name as the Defendant Shaw Capital LLC and Defendant Shaw Capital LP, and which conducts the same business activities and offers the same services as the Defendant companies.

37. Defendants use the SHAW and SHAW CAPITAL PARTNERS names and marks intentionally so that they can misappropriate and take advantage of the enormous recognition and value of the SHAW Marks.

38. Defendants have advertised and promoted, and continue to advertise and promote, their business under the SHAW and SHAW CAPITAL PARTNERS names and marks, and have caused their business to be listed under the SHAW CAPITAL PARTNERS name in telephone directories, social media websites, and other directories.

39. Defendants have given interviews touting their new venture under the SHAW CAPITAL PARTNERS name, such as:

- GreaterBatonRougeBusinessReport.Com, http://www.businessreport.com/article/20130418/BUSINESSREPORT0112/130419757:

  Two months after packing up the executive suite in what was then Shaw Tower, Jim Bernhard has launched a new venture—Shaw Capital Partners, a private equity firm that will invest in independent energy and infrastructure companies and assets. **…** Bernhard first hung out the Shaw Capital Partners shingle on the 10th floor of II City Plaza downtown in early March. For the past few weeks, the firm has been getting organized and preparing to meet with institutional investors. But while it has only

been open a few weeks, there has been no shortage of potential deals coming through the doors.

- GreaterBatonRougeBusinessReport.Com, http://lbweb.sx.atl.publicus.com/article/20130422/BUSINESSREPORT0112/130429968/Shaw-Capital-Partners-looks-to-wind-and-solar-for-first-project

  Speaking to the Press Club of Baton Rouge today, Bernhard says the new firm is moving at "warp speed," with up to 10 full-time employees. "Never has there been a private equity firm in Louisiana to rival the size," Bernhard says. "We're going to raise $2 [billion] to $3 billion in equity for fusions and acquisitions in the energy and infrastructure segment not only in Louisiana and the United States but throughout the world."

- Downtown-MidCity 9 News Neighborhoods, http://downtown-midcity.wafb.com/news/events/63821-former-shaw-chairman-isnt-ruling-out-running-office

  [Bernhard] told Press Club members about his new private equity company called Shaw Capital Partners. He plans to raise $2 to $3 billion in equity in the energy and infrastructure industry.

40. The brazen use as aforesaid by Defendants of the SHAW and SHAW CAPITAL PARTNERS names and marks in light of their knowledge of Plaintiff Shaw Group's ownership of the SHAW Marks is without the consent, license or permission of Plaintiff Shaw Group. Furthermore, Defendants are not agents or representatives of Plaintiff Shaw Group or otherwise associated with or approved or sponsored by Plaintiff Shaw Group.

41. On June 12, 2013, in a telephone conversation with Defendant Donofrio, Plaintiff Shaw Group demanded that Defendants cease all use of the SHAW Marks, including the SHAW and the SHAW CAPITAL PARTNERS names and marks, and Defendants have failed to respond.

42. Defendants' unlawful activities have resulted in unjust enrichment to Defendants and irreparable harm to Plaintiff Shaw Group. If Defendants' unlawful activities are not

enjoined, Defendants will continue to be unjustly enriched and will continue to irreparably harm Plaintiff Shaw Group and its SHAW Marks. Plaintiff Shaw Group has no adequate remedy at law.

**COUNT I**
**Federal Trademark Infringement**

43. Plaintiff Shaw Group repeats and realleges all of the foregoing allegations and incorporates them herein by reference as if repeated *in extenso*.

44. Plaintiff Shaw Group is now and has been the owner of the federal trademark registrations set forth in paragraph 22 above.

45. U.S. Registration Nos. 2685606 and 2712796 are conclusive evidence of the validity of the registered marks and of the registrations of the marks, of Plaintiff Shaw Group's ownership of the registered marks, and of its exclusive right to use the registered marks in commerce on or in connection with the services specified in the registrations. 15 U.S.C. § 1115(b).

46. Defendants' unauthorized and wrongful use of Plaintiff's SHAW name and mark in connection with their business and with the offering of Defendants' services is designed and calculated and is likely to cause confusion, to cause mistake, and to deceive as to the origin and sponsorship of Defendants' and their business and services, and to cause persons to believe wrongly that Defendants' services are Plaintiff Shaw Group's services, and that Defendants and their business are a part of or are sponsored, licensed, or endorsed by Plaintiff Shaw Group, all to the detriment of Plaintiff Shaw Group and the public.

47. Defendants' unauthorized use of reproductions, counterfeits, copies, and/or colorable imitations of Plaintiff Shaw Group's federally registered SHAW marks constitutes use in interstate commerce.

48. Defendants' activities described herein constitute infringement of federally registered service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

49. Defendants' unlawful acts have been committed with constructive knowledge, and upon information and belief, actual knowledge, of Plaintiff Shaw Group's prior, registered rights in the SHAW marks.

50. Defendants' unlawful acts have caused irreparable injury to Plaintiff Shaw Group, for which there is no adequate remedy at law, and will continue to cause irreparable injury to Plaintiff Shaw Group unless enjoined.

51. Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff Shaw Group. Defendants' unlawful actions have caused Plaintiff Shaw Group monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT II
## Federal Unfair Competition

52. Plaintiff Shaw Group repeats and realleges all of the foregoing allegations and incorporates them herein by reference as if repeated *in extenso*.

53. Plaintiff Shaw Group owns the common law rights in the SHAW Marks, which are distinctive and identify the services offered thereunder.

54. Defendants' use of Plaintiff Shaw Group's SHAW Marks complained of herein in connection with their business and services constitutes the use of false designations of origin and false descriptions and representations which tend to falsely describe and represent that Defendants and their business and services are a part of or are sponsored, licensed or authorized by Plaintiff Shaw Group, and are likely to cause confusion, to cause mistake, or to deceive consumers as to the origin of Defendants' business and services, as to an affiliation, connection,

or association of Defendants and their business and services with Plaintiff Shaw Group and its SHAW Marks, and as to sponsorship or approval of Defendants' business and services by Plaintiff Shaw Group.

55. Defendants' unauthorized use of reproductions, counterfeits, copies, and/or colorable imitations of Plaintiff Shaw Group's SHAW Marks constitute use in interstate commerce.

56. Defendants' unlawful acts as aforesaid have been committed with actual knowledge of the falsity of said designations of origin and representations, and upon information and belief, Defendants have offered, advertised and rendered their services in interstate commerce under said false designations and representations.

57. Defendants' actions constitute unfair competition, false designation of origin, palming off, and false description or representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58. Defendants' unlawful acts have caused Plaintiff Shaw Group irreparable harm, for which there is no adequate remedy at law, and will continue to cause irreparable harm to Plaintiff Shaw Group unless enjoined.

59. Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff Shaw Group. Defendants' unlawful actions have caused Plaintiff Shaw Group monetary damage in an amount presently unknown, but in an amount to be determined at trial.

**COUNT III**
**Unfair Competition**

60. Plaintiff Shaw Group repeats and realleges all of the foregoing allegations and incorporates them herein by reference as if repeated *in extenso*.

61. The aforesaid acts of Defendants constitute infringement, misappropriation, and misuse of Plaintiff Shaw Group's SHAW Marks, false advertising, passing-off, and unfair competition with Plaintiff, all in violation of Plaintiff's rights at common law and under the statutes of Louisiana and other states of the United States.

62. Defendants' unlawful acts have caused Plaintiff Shaw Group irreparable harm, for which there is no adequate remedy at law, and will continue to cause irreparable harm to Plaintiff Shaw Group unless enjoined.

63. Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff Shaw Group. Defendants' unlawful actions have caused Plaintiff Shaw Group monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT IV
## Unfair Competition, Infringement Of Common Law Names And Marks, Deceptive Acts Or Practices Under The Louisiana Unfair Trade Practices Act

64. Plaintiff Shaw Group repeats and realleges all of the foregoing allegations and incorporates them herein by reference as if repeated *in extenso*.

65. The aforesaid acts of Defendants constitute unfair competition, infringement of common law trade names and trademarks, unfair methods of competition, unethical, oppressive, unscrupulous, or substantially injurious and deceptive acts or practices in the conduct of trade or commerce, all in violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 1405 *et seq*.

66. Defendants' unfair and unlawful acts have caused Plaintiff Shaw Group irreparable harm, for which there is no adequate remedy at law, and will continue to cause irreparable harm to Plaintiff Shaw Group unless enjoined.

67. Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff Shaw Group. Defendants' unlawful actions have caused Plaintiff Shaw Group monetary damage in an amount presently unknown, but in an amount to be determined at trial.

**COUNT V**
**Injury To Business Reputation And Dilution**
**Under Louisiana Anti-Dilution Statute**

68. Plaintiff Shaw Group repeats and realleges all of the foregoing allegations and incorporates them herein by reference as if repeated *in extenso*.

69. The aforesaid acts of Defendants have caused a likelihood of injury to the business reputation of Plaintiff Shaw Group and dilution to the distinctive quality of Plaintiff Shaw Group's SHAW Marks, all in violation of the Louisiana Anti-Dilution Statute, La.Rev.Stat. 51:223.1.

70. Defendants' unfair and unlawful acts have caused Plaintiff Shaw Group irreparable harm, for which there is no adequate remedy at law, and will continue to cause irreparable harm to Plaintiff Shaw Group unless enjoined.

71. Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff Shaw Group. Defendants' unlawful actions have caused Plaintiff Shaw Group monetary damage in an amount presently unknown, but in an amount to be determined at trial.

**COUNT VI**
**Breaches Of The Covenant Of Good Faith And Fair DealingAnd**
**Unfair And Deceptive Business Practices**

72. Plaintiff Shaw Group repeats and realleges all of the foregoing allegations and incorporates them herein by reference as if repeated *in extenso*.

73. Defendants have engaged and are continuing to engage in unfair methods of competition and unfair or deceptive acts or practices in breaching their fiduciary duties, establishing a competing business using the SHAW Marks that was designed to mislead the trade, customers, and the public.

74. The acts of Defendants were done with misrepresentation, deception, or other unethical conduct, and are considered by legal standards to be immoral, unethical, oppressive, or unscrupulous. They undertook a course of calculated misconduct over a period of time before, during and after their affiliation with the Company and Plaintiff Shaw Group.

75. As a direct and proximate result of the foregoing, Plaintiff Shaw Group has suffered injury, harm, loss, and damage to itself, its business, and its property, and will continue to suffer monetary damages, loss of goodwill and injury to its business reputation. As a result of Defendants' unfair trade practices, Plaintiff Shaw Group is entitled to all damages allowable under law, including punitive damages and treble damages.

**COUNT VII**
**Breach Of Fiduciary Duty**

76. Plaintiff Shaw Group repeats and realleges all of the foregoing allegations and incorporates them herein by reference as if repeated *in extenso*.

77. As employees, officers, or directors of the Company, the Individual Defendants owed a fiduciary duty of the utmost good faith, fidelity and loyalty, confidence, candor, and competence to the Company.

78. In blatant violation of those fiduciary duties, and while employees, officers, or directors of the Company, the Individual Defendants formed and established the Business Defendants under the SHAW Marks for the purpose of directly competing with the Company and its successor-in-interest, Plaintiff Shaw Group.

79. As a direct and proximate result of the foregoing, Plaintiff has suffered injury, harm, loss, and damage to itself, its business, and its property, and will continue to suffer monetary damages, loss of goodwill and injury to its business reputation.

## COUNT VIII
## Breach Of Duty Of Loyalty

80. Plaintiff Shaw Group repeats and realleges all of the foregoing allegations and incorporates them herein by reference as if repeated *in extenso*.

81. Individual Defendants were trusted directors, officers, or employees of the Company, and each owed the Company a duty of loyalty which precluded them from pursuing their own interests in a manner adverse to the interests of the Company and its successor-in-interest Plaintiff Shaw Group, while employed by the Company or its successor-in-interest Plaintiff Shaw Group.

82. Each Individual Defendant breached his duty of loyalty to the Company and its successor-in-interest Plaintiff Shaw Group by forming and establishing the Business Defendants using the SHAW Marks for the purpose of directly competing with the Company and its successor-in-interest Plaintiff Shaw Group. As a direct and proximate result of such conduct, as described above, Plaintiff is entitled to equitable relief, including preliminary and permanent injunctions, prohibiting further wrongful conduct on the part of the Individual Defendants, and to recover damages resulting from Defendants' wrongful conduct.

83. Each Individual Defendant's breach of his duty of loyalty constitutes willful misconduct, and Plaintiff is entitled to exemplary and/or punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff The Shaw Group Inc. seeks relief as follows:

1. In favor of Plaintiff and against Defendants on all of Plaintiff's claims;

2. Enjoining and restraining Defendants, their officers, agents, servants, employees, attorneys and all others in active concert or participation with Defendants preliminarily and permanently from:

a. Using the names and marks SHAW CAPITAL PARTNERS, SHAW CAPITAL LLC, SHAW CAPITAL LP, or any colorable imitation thereof, on or in connection with the marketing, advertising, promoting, offering, or rendering of products or services in the energy and infrastructure field, including in connection with private equity and investment services related to energy and infrastructure companies and assets;

b. Making pitches to investors, soliciting customers, maintaining a website, maintaining a social media page, or otherwise affiliating themselves with or doing business under the SHAW Marks or as SHAW CAPITAL PARTNERS, SHAW CAPITAL LLC, SHAW CAPITAL LP;

c. Maintaining or using a domain name or a social media handle containing the SHAW designation;

d. Using any name or mark consisting of or incorporating SHAW on or in connection with the marketing, advertising, promoting, offering, or rendering of products or services in the energy and infrastructure field, including in connection with private equity and investment services related to energy and infrastructure companies and assets;

e. Using any name or mark consisting of or incorporating SHAW that is likely to cause dilution of Plaintiff's SHAW name and marks or injure Plaintiff Shaw Group's business reputation;

f. Using any other any name or mark similar to SHAW that is likely to cause confusion, mistake or deception on the part of consumers as to the origin, sponsorship, affiliation, or approval of Defendants' business or services;

g. Unfairly competing with Plaintiff in any manner whatsoever;

h. Committing any other act or making any other statement or using any other design that infringes or dilutes Plaintiff's SHAW Marks or constitutes an act of infringement, dilution, unfair competition, or deceptive trade practice under federal law, the laws of the State of Louisiana or common law.

3. Requiring Defendants to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, advertisements, catalogs, brochures, promotional materials, and all other materials in the possession or control of Defendants that bear any designation or design enjoined by Paragraphs 2(a) – 2(h) in this Prayer for Relief, or any other designation, device, or design that is confusingly similar to the SHAW name and marks or likely to dilute the distinctive quality of the SHAW name and marks;

4. Ordering Defendants to file with this Court and serve on Plaintiff within thirty (30) days after service of such injunction, a written report under oath pursuant to 15 U.S.C. § 1116 setting forth in detail the manner and form in which Defendants have complied with the injunction;

5. Requiring Defendants to account for and pay over to Plaintiffs Defendants' profits and all damages sustained by Plaintiff;

6. Trebling the amount of damages awarded Plaintiff pursuant to 15 U.S.C. §§ 1114 and 1117, and all punitive, exemplary, special, and treble damages as provided under applicable law, in the amount of three times the amount of the actual damage caused by Defendants' unlawful acts and practices, as detailed above;

7. Awarding Plaintiff its attorneys' fees, costs and expenses pursuant to 15 U.S.C. §§ 1114 and 1117; and

8. Awarding Plaintiff such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues triable by jury.

Respectfully submitted,

*/s/* Christopher E. Moore

**Christopher E. Moore (La. Bar No. 26430)**
**Thomas L. Watson (La. Bar No. 30114)**
**Paul S. Balanon (La. Bar No. 29076)**

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, Louisiana 70139
Telephone: (504) 648-3840
Facsimile: (504) 648-3859
christopher.moore@ogletreedeakins.com
thomas.watson@ogletreedeakins.com
paul.balanon@ogletreedeakins.com

Attorneys for The Shaw Group, Inc.